**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SWAROVSKI AKTIENGESELLSCHAFT and SWAROVSKI NORTH AMERICA LIMITED,

Plaintiffs,

v.

THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"

Defendants.

Case No. 25-cv-08024

**COMPLAINT**

Plaintiffs Swarovski Aktiengesellschaft and Swarovski North America Limited (collectively, "Swarovski" or "Plaintiffs") hereby bring the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

## I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of Swarovski's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Swarovski substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Swarovski to combat e-commerce store operators who trade upon Swarovski's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Swarovski's federally registered trademarks (the "Counterfeit Swarovski Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit Swarovski Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Swarovski is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Swarovski Products over the Internet. Swarovski has been and continues

to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiffs**

4. Plaintiff Swarovski Aktiengesellschaft ("SAG") is a Liechtenstein joint-stock company with its principal place of business at Droschistrasse 15 FL-9495 Triesen, Liechtenstein. SAG owns all right, title and interest in and to the SWAROVSKI® mark and name for use in connection with a wide range of goods and services.

5. Plaintiff Swarovski North America Limited ("SNA") is a Rhode Island corporation with its principal place of business at One Kenney Drive, Cranston, Rhode Island 02920. SNA uses the SWAROVSKI® mark under express permission from SAG.

6. Swarovski is a world-famous designer, manufacturer and distributor of crystals, jewelry and other fine, luxury products. With 130 years of experience in high-quality craftsmanship and mastery of precision cutting, Swarovski is known for its crystals of exceptional range and brilliance. They are used in creative industries such as fashion, jewelry, accessories, interior design, and lighting. Swarovski crystals are amongst the most technologically advanced in the world.

7. Swarovski designs, manufactures, and sells many high-quality crystal and gemstone products, including, but not limited to, jewelry, watches, accessories, sunglasses, figurines, and other decorative items (these and other genuine Swarovski branded products are collectively referred to herein as the "Swarovski Products"). Swarovski's finely crafted jewelry, watches, and fashion accessories provide modern and multifaceted women with a unique touch of sparkle, glamour, and elegance. Each of Swarovski's eye-catching designs is infused with

technical expertise and a passion for detail that has characterized the brand since its inception in 1895.

8. Swarovski Products are sold in approximately 170 countries worldwide, with production locations based in Austria, India, Thailand, Vietnam, Serbia and the United States. Number one in the fashion jewelry segment, Swarovski sells its creations in approximately 2,800 of its own branded stores around the globe, including 280 stores in the United States.

9. Since its founding in 1895, the unique and highly desirable Swarovski Products have led to enormous growth and financial success for Swarovski. In 2017 Swarovski reported revenue of more than $4 Billion, with the crystal business alone generating revenue of more than $3 Billion worldwide.

10. The root of this financial success lies in Swarovski's ability to consistently deliver highly desirable Swarovski Products. Swarovski Products have become enormously popular and even iconic, driven by Swarovski's arduous quality standards and innovative designs. Among the purchasing public, genuine Swarovski Products are instantly recognizable as such. In the United States and around the world, the Swarovski brand has come to symbolize high quality, and Swarovski Products are among the most recognizable in the world.

11. Providing genuine Swarovski branded retail store services over the Internet to sell genuine Swarovski Products is an important part of Swarovski's business strategy. Since 1996, Swarovski has operated a website at Swarovski.com where it promotes and sells genuine Swarovski Products. The Swarovski.com website features proprietary content, images and designs exclusive to Swarovski.

12. Swarovski has been using its trademarks in commerce continuously and consistently in the United States for many decades. Swarovski's trademarks are critical to its

business. Swarovski is the owner of and has widely promoted several trademarks which have earned substantial fame and considerable goodwill among the public. Swarovski has used its family of trademarks (collectively, the "SWAROVSKI Trademarks") on or in close connection with its line of jewelry, figurines, and accessories, as well as in connection with packaging, retail store services, and online e-commerce. Swarovski Products and/or its packaging always include at least one of the SWAROVSKI Trademarks. Swarovski incorporates a variety of distinctive marks in its various Swarovski Products. Consequently, the United States Patent and Trademark Office has granted Swarovski multiple federal trademark registrations. Swarovski currently owns many federal trademark registrations and pending applications, and it uses the SWAROVSKI Trademarks in connection with the marketing of its Swarovski Products. The SWAROVSKI Trademarks, including but not limited to those listed below, are famous and valuable assets of Swarovski.

| Registration No. | Trademark |
|---|---|
| 934,915<br>1,739,479<br>1,785,590<br>2,402,230<br>3,239,948<br>3,864,495<br>4,570,427<br>5,557,793<br>6,015,795<br>7,231,233 | SWAROVSKI |
| 5,317,944 | CRYSTALDUST |
| 6,567,077 | DULCIS |
| 6,560,652 | LUCENT |
| 6,897,976 | MATRIX |
| 6,560,634 | ORBITA |
| 2,834,231 | POINTIAGE |
| 5,467,037 | SPARKLING DANCE |
| 4,890,939 | XERO |
| 3,011,650 | XILION |

| | |
|---|---|
| 6,594,283 | WONDERLAB |
| 7,485,358 | CRYSTALS BY SWAROVSKI CONSCIOUSLY CRAFTED SINCE 1895 |
| 5,946,840 | SINCE 1895 MADE WITH SWAROVSKI CREATED DIAMONDS |
| 1,650,596<br>2,408,747 | |
| 3,230,029 | |
| 4,791,314 | |



| Registration No. | Trademark |
|---|---|
| 5,699,974<br>5,786,531<br>7,381,067 | |
| 5,786,768 | |
| 5,786,769<br>5,903,320 | |
| 6,559,381<br>6,573,119 | |

13. The above U.S. registrations for the SWAROVSKI Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the SWAROVSKI Trademarks constitute *prima facie* evidence of their validity and of Swarovski's exclusive right to use the SWAROVSKI Trademarks pursuant to 15 U.S.C. § 1057(b). The SWAROVSKI Trademarks have been used exclusively and continuously by Swarovski for many years and have never been abandoned. True and correct copies of the United

States Registration Certificates for the above-listed SWAROVSKI Trademarks are attached hereto as **Exhibit 1.**

14. The SWAROVSKI Trademarks are exclusive to Swarovski, and are displayed extensively on or in close connection with Swarovski Products, Swarovski packaging, and in Swarovski's marketing and promotional materials. Swarovski Products have long been popular around the world and have been extensively promoted at great expense. In fact, Swarovski expends millions of dollars annually promoting and marketing the SWAROVSKI Trademarks. Swarovski Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as desired luxury items. Because of these and other factors, the Swarovski name and the SWAROVSKI Trademarks have become famous throughout the United States.

15. The SWAROVSKI Trademarks are distinctive when applied to the Swarovski Products and packaging, signifying to the purchaser that the products come from Swarovski and are consistent with Swarovski's quality standards. Whether Swarovski manufactures the products itself or licenses others to do so, Swarovski has ensured that products bearing or sold within packaging bearing the SWAROVSKI Trademarks are manufactured to the highest quality standards. The SWAROVSKI Trademarks have achieved tremendous fame and recognition which has only added to the distinctiveness of the marks. As such, the goodwill associated with the SWAROVSKI Trademarks is of incalculable and inestimable value to Swarovski.

**The Defendants**

16. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Swarovski. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions,

or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

17. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Swarovski to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Swarovski will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

18. The success of the Swarovski brand has resulted in significant counterfeiting of the SWAROVSKI Trademarks. Consequently, Swarovski has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Swarovski has identified many fully interactive, e-commerce stores offering Counterfeit Swarovski Products on online marketplace platforms, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. At last count, global trade in counterfeit and pirated goods was worth an estimated $467 billion per year — accounting for a staggering 2.3% of all imports, according to the Organization for Economic Cooperation and Development (the "OECD").[2] The primary source of all those counterfeits, the OECD and others say, is China.[3]

---

[2] *See* Press Release, Organization for Economic Cooperation and Development, *Global trade in fake goods reached USD 467 billion, posing risks to consumer safety and compromising intellectual property* (May 7, 2025), https://www.oecd.org/en/about/news/press-releases/2025/05/global-trade-in-fake-goods-reached-USD-467-billion-posing-risks-to-consumer-safety-and-compromising-intellectual-property.html.

[3] *Id.*; *See also, Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, U.S. Customs and Border Protection.

19. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

20. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold Counterfeit Swarovski Products to residents of Illinois.

21. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales of Counterfeit Swarovski Products by designing the e-commerce stores operating under the Seller Aliases so that they appear

---

[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.
[5] *Id.* at p. 22.
[6] *Id.* at p. 39.
[7] Chow, *supra* note 4, at pp. 186-87.

to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, PayPal. E-commerce stores operating under the Seller Aliases often include content and design elements that make it very difficult for consumers to distinguish such stores from Swarovski's website or another authorized retailer. Swarovski has not licensed or authorized Defendants to use any of the SWAROVSKI Trademarks, and none of the Defendants are authorized retailers of genuine Swarovski Products.

22. Many Defendants also deceive unknowing consumers by using the SWAROVSKI Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Swarovski Products. Other e-commerce stores operating under the Seller Aliases omit using SWAROVSKI Trademarks in the item title to evade enforcement efforts, while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Swarovski Products.

23. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

24. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Swarovski Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

25. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other seller aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Swarovski Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that many of the Counterfeit Swarovski Products may be manufactured by and come from a common source and that Defendants are interrelated.

26. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

27. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Swarovski's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Swarovski. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

28. Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Counterfeit Swarovski Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Swarovski, have knowingly and willfully used and continue to use the SWAROVSKI Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Swarovski Products into the United States and Illinois over the Internet.

29. Defendants' unauthorized use of the SWAROVSKI Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Swarovski Products, including the sale of Counterfeit Swarovski Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Swarovski.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

30. Swarovski hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

31. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered SWAROVSKI Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The SWAROVSKI Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from the Swarovski Products offered, sold or marketed under the SWAROVSKI Trademarks.

32. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the SWAROVSKI Trademarks without Swarovski's permission.

33. Swarovski is the exclusive owner of the SWAROVSKI Trademarks. The United States Registrations for the SWAROVSKI Trademarks (Exhibit 1) are in full force and effect. On information and belief, Defendants have knowledge of Swarovski's rights in the SWAROVSKI Trademarks, and are willfully infringing and intentionally using counterfeits of the SWAROVSKI Trademarks. Defendants' willful, intentional and unauthorized use of the SWAROVSKI Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Swarovski Products among the general public.

34. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

35. Swarovski has no adequate remedy at law, and if Defendants' actions are not enjoined, Swarovski will continue to suffer irreparable harm to its reputation and the goodwill of its well-known SWAROVSKI Trademarks.

36. The injuries and damages sustained by Swarovski have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Swarovski Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

37. Swarovski hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

38. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Swarovski Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Swarovski or the origin, sponsorship, or approval of Defendants' Counterfeit Swarovski Products by Swarovski.

39. By using the SWAROVSKI Trademarks in connection with the sale of Counterfeit Swarovski Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Swarovski Products.

40. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Swarovski Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

41. Swarovski has no adequate remedy at law and, if Defendants' actions are not enjoined, Swarovski will continue to suffer irreparable harm to its reputation and the associated goodwill of the Swarovski brand.

**PRAYER FOR RELIEF**

WHEREFORE, Swarovski prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the SWAROVSKI Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Swarovski Product or is not authorized by Swarovski to be sold in connection with the SWAROVSKI Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Swarovski Product or any other product produced by Swarovski that is not Swarovski's or not produced under the authorization, control, or supervision of Swarovski and approved by Swarovski for sale under the SWAROVSKI Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Swarovski Products are those sold under the authorization, control, or supervision of Swarovski, or are sponsored by, approved by, or otherwise connected with Swarovski;

    d. further infringing the SWAROVSKI Trademarks and damaging Swarovski's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Swarovski, nor authorized by Swarovski to be sold or offered for sale, and which bear any of Swarovski's trademarks, including the SWAROVSKI Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Swarovski's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, Amazon, Temu, and Walmart (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the SWAROVSKI Trademarks;

3) That Defendants account for and pay to Swarovski all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the SWAROVSKI Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Swarovski be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the SWAROVSKI Trademarks;

5) That Swarovski be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 15th day of July 2025.   Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Marcella D. Slay
Thomas J. Juettner
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
mslay@gbc.law
tjjuettner@gbc.law

*Counsel for Plaintiffs Swarovski Aktiengesellschaft and Swarovski North America Limited*